# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:  Lynette Meyer,                                            BKY 09-61157

                    Debtor.                              **ORDER FOR JUDGMENT**

This matter arose on the trustee's objection to the debtor's claimed exemption in an annuity.  The Court allowed the parties time for discovery, held a hearing on cross motions for summary judgment under 11 U.S.C. § 522(d)(11)(E), and thereafter took the matter under advisement.  Gene Doeling appeared as the trustee.  Katrina Turman appeared on behalf of the debtor.  Based upon all of the files, record and proceedings herein, the Court being now fully advised makes this Order pursuant to the Federal and Local Rules of Bankruptcy Procedure.

## I.  SUMMARY JUDGMENT

Summary judgment shall be granted if the court determines that "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." See Fed.R.Civ.P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The parties agree that the material facts of this case are not in dispute and have accordingly pleaded the matter appropriately as cross motions for summary judgment.

## II. PROCEDURAL BACKGROUND

Lynette Meyer filed a Chapter 7 bankruptcy petition on October 9, 2009.  In her original schedules, she listed and claimed exempt an Executive Life Insurance Company annuity valued at $65,000 under M.S.A. § 550.37(22).  Of that $65,000, $30,000 is payable on 10/1/2014 and $35,000 is payable on 10/1/2019, as settlement for general damages from a car accident in 1984.  Meyer also listed an Executive Life annuity number 4497-A, as settlement for general damages from a car accident in 1984, and sought to exempt that under M.S.A. § 550.37(2) in the amount of $25,000

In amended schedules filed on October 29, 2009, Meyer changed her exemptions from the Minnesota State exemptions to the Federal exemptions, scheduled the Executive Life Insurance Company annuity valued at $65,000, and claims $6,400 of the $65,000 exempt under 11 U.S.C. § 522(d)(5), and an unknown amount exempt under § 522(d)(11)(E).  Meyer also seeks to exempt Executive Life annuity number 4497-A, which the debtor values at $25,000, utilizing § 522(d)(5) in the amount of $4,800 and § 522(d)(11)(D) in the amount of $20,200.  The trustee initially objected to the § 522(d)(11)(D) exemption, but withdrew the objection in the pleadings.

The trustee argues that none of the $58,600 remaining to be paid under the annuity is for payment of Meyer's loss of future earnings, and objects to the claimed exemption of "unknown" of those settlement proceeds under § 522(d)(11)(E) because the remaining proceeds to be paid under the annuity contract are for claims other than future earnings, and are moreover not reasonably necessary for the support of the debtor.  To the contrary, Meyer claims that the annuity payments are meant to compensate her for lost earnings as a result of the 1984 car accident, that the funds are reasonably necessary for her support, and that she is entitled to the exemption.

## III.  UNDISPUTED FACTS

The material facts essential to the exemption issue are unchallenged.  On January 7, 1984, Lynette Meyer was in a severe car accident. Meyer was diagnosed with whiplash, compression fracture of 11T vertebrae, and chip of another vertebrae and torn ligaments and muscles in the back. She was treated with pain medications, muscle relaxers and anti-inflammatory medications.  Meyer entered into a structured settlement agreement with Farmers Union insurance entitled Release of All Claims. Under the terms of the settlement, Meyer was paid $10,000 at that time and then paid every five years through an annuity owned by Farmers Union.

The Release provides, among other things, that "in consideration of $10,000 and other related benefits … we ... have released and discharged …  Farmers Union … from .. all causes of action, claims, demands, damages … on account of or in any way growing out of, any and all known and unknown personal injuries and death and property damage resulting or to result from accident…"  The Release further stated, "This release contains the ENTIRE AGREEMENT between the parties hereto, and the terms of this release are contractual and not a mere recital."

The September 28, 1984, Settlement Agreement with Nation Farmers Union Property and Casualty Insurance Company was a comprehensive agreement for all damages, claims or actions arising out of the accident: "Claimant hereby releases and forever discharges Defendant and all other persons and entities of and from any and all past, present or future claims and demands which Claimant has or clams to have, for or in any manner growing out of the Occurrence including, without limitation, any and all known or unknown claims for bodily or personal injuries or death and the consequence thereof. This release and discharge shall be a fully binding and complete settlement among all of the parties to this Agreement…This release is intended to and does hereby extinguish any claim Claimant may have against any other defendant, person, or entity for the acts damages or events in question. ... This release is entered into in lieu of a suit for damages received on account of personal injuries or sickness based upon the tort action arising from the Occurrence."

The agreement goes on to state: "Claimant understands that she may have suffered injuries that are unknown to her at present or that unknown complications of

present known injuries may arise, develop or be discovered in the future, including subsequent death or disability. She acknowledges that the sums paid in consideration of this Agreement are intended to and do release and discharge any claims by her in regard to such unknown or future complications, including effects or consequences thereof and regardless of mistake of fact or mistake of law. Claimant does hereby waive any rights to assert in the future any claim not now known or suspected even though if such claims were known such knowledge would materially affect the terms of this Agreement."

According to the settlement, Meyer was paid $5,000 in 1989; $8,000 in 1994; $15,000 in 1999; $20,000 in 2004; $25,000 in 2009; and should be paid $30,000 in 2014; and $35,000 in 2019.

Since the accident, Meyer has had ongoing medical problems and related expenses.  Three weeks after the accident, she had chiropractic and kinesiology treatment for a period of time.  In 1987, she experienced significant lower back pain and underwent diagnostic tests that showed significant disc compression deemed degenerative related to the auto accident. Chiropractic care continued at least two or more times a month along with pain medication treatment.

Meyer's pain issues persisted and she continued to receive chiropractic care. After her divorce in 1989, she began strain/counterstrain therapy due to pain and increased back problems.  Meyer was also treated with medications for neurological pain, and was diagnosed with related spinal cord tissue and spinal bone spur medical problems, presumed to be related to the auto accident and expected to worsen with time. During the recent past, Meyer has also been diagnosed with fibromyalgia and chronic fatigue syndrome, likely attributable to the accident, and requires regular physical and medical therapy treatments for these conditions.

Prior to the accident, Meyer had worked full time variously as a waitress, an assembly line worker at 3M, and as a factor worker at the Min-Dak Sugar Beet Factory. At the time of the accident, she was a stay-at-home mother raising her children. Following the accident, Meyer was not able to continue doing factory work because of her ongoing back pain.  Likewise, she was unable to physically take care of her children, perform housework or yard work, or to lift, stand or walk for any extended period of time.  Conscious of her physical limitations, Meyer decided to attend college and completed a degree in psychology from Moorhead State University in 1994.

Since then, she has worked in various social service positions, including working as a child counselor, and most recently as an advocate for victims of domestic violence for eleven years. During the last four to five years, Meyer's ability to work has been decreased significantly due to increasing pain and fatigue.  Presently, she is unable to work. She applied for Social Security disability insurance in late 2009, and was recently awarded disability benefits of $887 per month beginning in June 2010.

Because she is unable to work, Meyer cannot afford medical insurance, and some of the treatments her condition requires are in any event non-covered therapies, such as, for example, e-stimulation and ultrasound. Meyer has incurred out of pocket medical expenses as a result of the accident-related injuries and conditions for office calls, deductibles, prescriptions, and co-pays, in an amount ranging from $3,000 to $5,000 per year. She continues to require muscle relaxer medication, pain and anti-inflammatory medication, and antidepressant medication as well, in connection with the pain and disability originated from the accident.

In November 2009, Meyer moved to Alexandria, Virginia, with her long-term unmarried partner, Bruce, to be closer to Meyer's children. Bruce is employed and earning more than he did when the couple lived in Minnesota, but without Meyer's former income, their combined income is still more than $600 less each month, leaving their net monthly income (not including Meyer's Social Security disability award) at approximately $3,573.00. Their basic monthly expenses have increased to $4,653 leaving over $1,000 in monthly expenses that the couple cannot afford. Even with Meyer's Social Security Disability income, the couple's monthly disposable income will still be deficient by nearly $200 each month.

## IV. DISCUSSION

Section 522(d)(11)(E) provides:

(d)     The following property may be exempted under subsection (b)(2) of this section:

(11)     The debtor's right to receive, or property that is traceable to–

(E)     a payment in compensation of loss of future earnings of the debtor or an individual of whom the debtor is or was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

See 11 U.S.C. § 522(d)(11)(E).[1]

"Exemptions must be construed liberally in favor of the debtor and in light of the purposes of the exemption." See Andersen v. Ries, 259 B.R. 687, 690 (8th Cir. 2001).

"Pursuant to Federal Rule of Bankruptcy Procedure 4003(c), the objecting party

---

[1]  The related subsections of 522 provide: (b)(1) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection. See 11 U.S.C. § 522(b)(1). Property listed in this paragraph is property that is specified under subsection (d), unless the State law that is applicable to the debtor under paragraph (3)(A) specifically does not so authorize. See 11 U.S.C. § 522(b)(2).

has the burden of proving an exemption is not properly claimed." <u>See</u> <u>In re Whitson</u>, 319 B.R. 614, 617 (Bankr. E.D.Ark. 2005).  "The prima facie presumption is that a claimed exemption is correct, and if the objecting party fails to carry the burden of proving by a preponderance of the evidence that the exemption should be disallowed, the exemption will stand." <u>Whitson</u>, 319 B.R. at 617, citing <u>In re Scotti</u>, 245 B.R. 17, 20 (Bankr. D.N.J. 2000) (quoting <u>In re Dunn</u>, 215 B.R. 121, 130 (Bankr. E.D.Mich. 1997) (quoting <u>In re Mann</u>, 201 B.R. 910, 915 (Bankr. E.D.Mich. 1996))).

"When called upon to allocate an award or settlement to exemptible and non-exemptible damages, courts should not resort to speculation." <u>Whitson</u>, 319 B.R. at 617.  "One bankruptcy court has stated, '[t]he fact that we have been reduced to speculation necessarily mandates the conclusion that the [objector] has not met his burden.'" <u>Whitson</u>, 319 B.R. at 617, citing <u>In re Cramer</u>, 130 B.R. 193, 195 (Bankr. E.D.Pa. 1991) (quoting <u>In re Magnus</u>, 84 B.R. 976, 979 (Bankr. E.D.Pa. 1988)).

In the <u>Whitson</u> case, as in the case at bar, the debtors exempted proceeds from a personal injury settlement under § 522(11)(e) under loss of future earnings with an unknown value. <u>Whitson</u>, 319 B.R. at 615.  The <u>Whitson</u> settlement agreement stated the award was for personal injuries, past and present medical bills, loss of earnings, past and future, pain and suffering, loss of enjoyment of life, and loss of consortium. <u>Id</u>. at 616. The trustee there argued that the settlement was compensation for things other than loss of future earnings. <u>Id</u>. The court did not find this argument persuasive and held that the court cannot speculate on allocating an award or settlement to exemptible assets and nonexemptible assets. <u>Id</u>.

The trustee here argues that, because Meyer was not earning wages for the three years prior to the accident and because at the time of the accident it was her intention to continue to be a stay at home parent, then it follows that none of the settlement amount was meant to compensate Meyer for lost wages or income.  The trustee relies upon Meyer's affidavit and deposition testimony in which she explained that the settlement annuity provides for medical care related to the accident injuries:

"This annuity is to provide for the medical care that I require for my ongoing medical conditions and expenses that stem from the car accident. I continue to take muscle relaxer medication, pain and anti-inflammatory medication, and antidepressant medication. ... "My understanding of the settlement was that it was to pay for the injuries I incurred in the auto accident."

However, Meyer also stated that she "believes the intent of the award was for her medical care and possibly loss of future earnings if she was unable because of the injury to work and earn her own living."  This not only makes basic practical sense, but it is also a proposition supported by the record no more or less than the trustee's contention that the award was not for lost wages and income.  The settlement itself specifically applies to any potential future disability related to the accident injuries, and disability necessarily includes a possible limited or complete inability to work.

Trustee:     What did you think it [the settlement annuity] was for?

Meyer:       I thought it was for medical treatment. I was still in a lot of pain. I've always had pain from this. I know I couldn't work physically demand jobs, that I was very limited in what I could do because of – of this, so I thought it was for medical treatments and to help with, you know, the employment coverage because there's so much work I cannot do.

Trustee:     What work have you done in the past that you felt you could no longer do, work you'd done prior to the accident that you couldn't do after you were hurt in the accident?

Meyer:       I was – after the accident I wasn't even able to take care of my own toddler or housework. The insurance paid to have some come in and clean the house with help with my little one until my husband got home for approximately 9 months. I think insurance paid for that. I mean, I was unable to do the normal things I had done, mowing the lawn, raking, just lifting, taking – taking care of my family I was not able to do. When I was younger I had done waitressing. I was not able to do that. I was not able to work at manufacturing assembly linen like 3M or the sugar beet factory. I was unable to stand for any period of time or walk.

Trustee:     You've listed in your bankruptcy schedules $65,000 in future payments that you're going to get paid under the annuity. Do you recall that?

Meyer:       Yes.

Trustee:     Of that amount, $6,400 you've exempted under what's called the wild car exemption to protect almost any type of property under that. That leaves I believe $59,600 of benefits that you're going to get paid under the annuity that you're claiming are loss of future earnings. My question to you is, is it your claim that that $59,600 was intended to be compensation to you as loss of future earnings when the agreement was entered back in 1984?

Meyer:       I am not claiming that it's all for loss of future earnings. I believe the intent was for my medical care and possible loss of future earnings if I'm unable because of this injury to work and earn my own living, that it would be inclusive. I do have medical expenses on a regular basis.

Trustee:     It was your feeling or your thought that those payments were to pay for medical expenses and loss of future earnings?

Meyer:       Yes.

-6-

<u>See</u> Meyer Depo., p.38 lines 1-22; p.39 lines 1-5; p.43 lines 16-22; p.44 lines 1-17.

The trustee has not presented evidence to overcome the undisputed and extensive facts that unequivocally support the conclusion that the auto accident injuries sustained by Meyer have always limited the way in which she was able to work, and therefore her earning capacity, and that those injuries resulted in progressively degenerative conditions which have steadily decreased and finally terminated her ability to work. Likewise, there is no sound manner by which to find that the settlement did not mean to cover lost wages and future earnings, while at the same time it expressly covered everything that ever did or might arise as a result of those injuries.

Like the court in <u>Whitson</u>, "[b]ased on the record presented, the Court can only speculate as to the proper portion of the award that is attributable to loss of future earnings." <u>Whitson</u>, 319 B.R. at 618. "Therefore, the Trustee has not met his burden of proof to show that the proceeds of the settlement are not properly exemptible as loss of future earnings." <u>Id</u>., citing <u>In re Bova</u>, 205 B.R. 467, 477 (Bankr. E.D.Pa. 1997) (overruling objection to exemption where objector failed to meet burden of proof that portion of the settlement does not fall within an exemption); <u>Cramer</u>, 130 B.R. at 195 (stating that objecting creditor failed to disprove that debtor's recovery in a lawsuit represented loss of future earnings that was exemptible; <u>In re Magnus</u>, 84 B.R. at 978 (ruling that where a trustee can adduce no evidence contradicting a debtor's characterization of an exemption, the trustee has not met the burden of proof) (citing <u>In re Harris</u>, 50 B.R. 157, 159 (Bankr. E.D.Wis. 1985)).

The remaining question for the Court is "whether the amount to be exempted is reasonably necessary for the Debtors' support." <u>Whitson</u>, 319 B.R. at 619, citing <u>Scotti</u>, 245 B.R. at 22 (citing <u>In re Hanson</u>, 226 B.R. 106, 108 (Bankr. D.Idaho 1998); <u>Bova</u>, 205 B.R. at 477; <u>Cramer</u>, 130 B.R. at 195-96). "In making this determination, courts consider 'the debtor's present circumstances, other exempt property, the debtor's present income and any other factors indicating what amount is truly necessary to meet the debtor's basic needs.'" <u>Whitson</u>, 319 B.R. at 619, citing <u>Bova</u>, 205 B.R. at 477 (quoting <u>In re Haga</u>, 48 B.R. 492, 495 (Bankr. E.D.Tenn.1985)).

The uncontested facts demonstrate that Meyer's ability to support herself in the future has been severely limited because of the 1984 accident. She suffers multiple injury derived health problems and is dependent upon many medications and physical therapies. She endures chronic pain. Meyer is presently unemployed and unable to work because of her physical ailments.[2] She was recently awarded social security disability benefits. Even considering the income of her unmarried partner, the couple's monthly expenses outweigh their monthly income. The settlement annuity funds are

---

[2] The Trustee makes much the fact that Meyer voluntarily left her position as a victims' advocate to move out of state to be closer to her children. However, it is uncontroverted that her physical problems and pain have been worsening severely over the last several years, that she is no longer physically able to maintain full time employment, and that she has qualified for Social Security disability income.

reasonably necessary for Meyer's support.  Therefore, the trustee's objection is overruled and the entire balance of the settlement proceeds is determined to be exempt pursuant to 11 U.S.C. § 522(d)(11)(E).

## V.  DISPOSITION

IT IS HEREBY ORDERED:

1.      The trustee's objection to the debtor's claimed exemption in the Executive Life annuity is OVERRULED;

2.      The trustee's motion for summary judgment is DENIED:

3.      The debtor's motion for summary judgment is GRANTED; and

4.      The exemption claimed by the debtor in the Executive Life annuity is ALLOWED pursuant to 11 U.S.C. § 522(d)(11)(E).

LET JUDGMENT BE ENTERED ACCORDINGLY.

BY THE COURT:

DATED: August 25, 2010                    /e/ Dennis D. O'Brien
                                          United States Bankruptcy Judge

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *08/25/2010*
Lori Vosejpka, Clerk, By DLR, Deputy Clerk